# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY HOSKINS,<br><br>        Plaintiff,<br><br>    v.<br><br>L. NGUYEN, et. al.,<br><br>        Defendants. | Case No.: 1:17-cv-01133-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 26] |

    Plaintiff Anthony Hoskins is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

    Currently before the Court is Defendants' motion for summary judgment, filed March 29, 2019.

**I.**

**RELEVANT BACKGROUND**

    This action is proceeding against Defendants Nguyen and Baniga for deliberate indifference to a serious medical need in violation of the Eighth Amendment.[1]

///

///

---

[1] Defendant Loung Nguyen was improperly named as L. Ngyen. (See Answer at 1; ECF No. 15.)

On January 25, 2018, Defendants filed an answer to the complaint. On February 1, 2018, the Court issued the discovery and scheduling order setting, among other things, the deadline to amend the pleadings for August 1, 2018. (ECF No. 16.)

On April 9, 2018, the Court granted Defendants' request to extend the deadline to file an exhaustion related motion for summary judgment to August 1, 2018. (ECF No. 18.) However, all other deadlines remained in full force and effect. (Id.)

On September 21, 2018, the Court granted Defendants' second request to modify the scheduling order and extended the deadlines to complete discovery and file a dispositive motion to February 1, 2019 and April 1, 2019, respectively. (ECF No. 21.)

on February 27, 2019, Plaintiff filed a motion to amend the complaint, along with a proposed second amended complaint which was lodged. (ECF Nos. 22, 23.) Defendants filed an opposition on March 5, 2019, and Plaintiff did not file a reply. On March 26, 2019, the undersigned issued Findings and Recommendations recommending that Plaintiff's motion to amend the complaint be denied. (ECF No. 25.) The Findings and Recommendations were adopted in full on June 5, 2019, and Plaintiff's motion to amend the complaint was denied. (ECF No. 30.)

As previously stated, on March 29, 2019, Defendants filed a motion for summary judgment.[2] (ECF No. 26.) Plaintiff did not file an opposition and the time to do has passed. Accordingly, Defendants' motion for summary judgment is deemed submitted without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] On May 9, 2019, Defendants filed a statement of non-opposition given that Plaintiff did not file a timely opposition to their motion for summary judgment, which was served on Plaintiff at California State Prison, Los Angeles County where he is currently incarcerated. (ECF No. 27.) On May 10, 2019, notwithstanding the fact that Plaintiff did not file a change of address, the Court directed Defendants to serve a copy of their motion for summary judgment at Plaintiff's new address of record, which was done on May 14, 2019. (ECF Nos. 28, 29.) Therefore, it is clear that Plaintiff has been properly served with Defendants' motion for summary judgment both at his previous and present place of incarceration.

2

judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

In 2007, Plaintiff developed cystic acne. Plaintiff did not see a dermatologist for two years which caused his skin disease to degenerate so severely that he now suffers from the shingles virus. Plaintiff was also never provided pain medication for his chronic pain. Prison officials advised Plaintiff that his shingles was directly related to his skin disease, and a sign of stress from his pain rashes, swelling, keloids, open sores and sleep deprivation.

On April 13, 2017, Plaintiff met with Dr. Nguyen who advised him that he reviewed all of inmate appeals and medical records, and Plaintiff expressed having chronic pain symptoms and that he had been waiting two years to see a dermatologist. Plaintiff described that he had abscesses all of his body which lead to chronic pain. Plaintiff requested pain medication, other than Ibuprofen, which was denied.

3

Plaintiff also requested to be placed back on Doxycycline which helped alleviate the cystic acne, but the request was denied by Dr. Nguyen. Dr. Nguyen also denied Plaintiff's request for a special diet because the milk and fluids in his body would turn into point and exit his pores.

**B.     Statement of Undisputed Facts**

1. Plaintiff Hoskins is an inmate with the California Department of Corrections and Rehabilitation (CDCR), currently housed at Kern Valley State Prison. (ECF No. 22 at 1.)

2. Plaintiff Hoskins who has no formal medical training, believes that a higher dosage of doxycycline to treat cystic acne was indicated. (Pl. Dep. at 53:16-17; 54:6-55:25, attached to Hernandez Decl. Ex. A.)

3. Plaintiff Hoskins suffers from cystic acne and shingles, both which cannot be cured, but are managed conditions. Plaintiff Hoskins developed cystic acne around 2007 or 2008. (Nguyen Decl. ¶ 7; Pl. Dep. at 10:5-7, 10:23-11:2.)

4. Prior to arriving at California Correctional Institution—Tehachapi (CCI), Plaintiff developed keloids on his face. (Nguyen Decl. ¶ 6.)

5. Plaintiff's sole cause of action for deliberate indifference arises from care provided by Dr. Nguyen, and supervision of Dr. Baniga, while Plaintiff was housed at CCI only. (Pl. Dep. at 9:10-10:4.)

6. Plaintiff was housed at CCI from February 24, 2017 through the date of filing the amended complaint on October 10, 2017. (ECF 10 at 2; Nguyen Decl. ¶ 6.)

7. Plaintiff named Dr. Baniga as a Defendant as Dr. Baniga supervised Dr. Nguyen. (Pl. Dep. at 44:25-45, 46:2.)

8. Dr. Baniga did not meet, examine or provide treatment to Plaintiff. (Baniga Decl. ¶ 4; Pl. Dep. at 44:25-45:12.)

9. On May 1, 2017, Dr. Baniga reviewed a Health Care Appeal filed by Plaintiff on April 4, 2017. (Baniga Decl. ¶ 5.)

10. Upon his review of the treatment provided by Dr. Nguyen, Dr. Baniga did not have any criticism of the treatment rendered or treatment plan set out by Dr. Nguyen. (Baniga Decl. ¶ 5.)

11. Plaintiff arrived at CCI on February 23, 2017. (Nguyen Decl. ¶ 6.)

12. Prior to Plaintiff's first medical appointment with Dr. Nguyen, Dr. Nguyen reviewed medical records and medical appeals to familiarize and understand his new patient's medical history. (Nguyen Decl. ¶ 6.)

13. Dr. Nguyen determined Plaintiff had been diagnosed with cystic acne, which some had developed to keloids, prior to arrival at CCI. (Nguyen Decl. ¶ 6.)

14. Plaintiff had been prescribed Doxycycline, Amoxicillin, Bactrim, topicals Clindamycin and Chlorhexidine, for acne, all to various effectiveness, within the previous 6 months of his arrival at CCI. (Nguyen Decl. ¶ 6.)

15. Plaintiff had also been referred to a dermatology examination which had not yet taken place. (Nguyen Decl. ¶ 6.)

16. Plaintiff had also been diagnosed with shingles, treated with Acyclovir and Calamine topical. (Nguyen Decl. ¶ 6.)

17. Plaintiff suffers from cystic acne, an incurable skin condition. (Nguyen Decl. ¶ 7 & Ex. A.)

18. Plaintiff reported to Dr. Nguyen that he had suffered from cystic acne since about 2007. (Nguyen Decl. ¶ 7 & Ex. A.)

19. Acne is a disorder that affects the skin's oil glands and hair follicles. It is one of the most common dermatological conditions. The small holes in the skin (pores) connect to oil glands under the skin. These glands make an oily substance called sebum. (Nguyen Decl. ¶ 7.)

20. The pores connect to the glands by a canal called a follicle. Inside the follicles, oil carries dead skin cells to the surface of the skin. A thin hair also grows through the follicle and out of the skin. (Nguyen Decl. ¶ 7.)

21. Sometimes, the hair, sebum, and skin cells clump together into a plug. The bacteria in the plug cause swelling. Then when the plug starts to break down, a pimple grows. (Nguyen Decl. ¶ 7.)

22. Most pimples are found on the face, neck, back, chest, and shoulders, but do develop in other parts of the body. (Nguyen Decl. ¶ 7.)

23. The course of acne can be either acute or chronic; its manifestations can appear in

waves, sometimes with dramatically severe inflammation. (Nguyen Decl. ¶ 7.)

24. Cystic acne is what may result from the most severe types of pore blockages. (Nguyen Decl. ¶ 7.)

25. Keloids are a type of raised scar. (Nguyen Decl. ¶ 7.)

26. Keloids occur when the skin has healed after an injury and can grow to be much larger than the original injury that caused the scar. Anything that can cause a scar can cause a keloid, including acne. (Nguyen Decl. ¶ 7.)

27. Plaintiff suffered from shingles and had chickenpox as a child. (Nguyen Decl. ¶ 8.)

28. Shingles is caused by the varicella-zoster virus, the same virus that causes chickenpox, characterized by a painful skin rash with blisters in a localized area. (Nguyen Decl. ¶ 8.)

29. Any individual who had chickenpox may develop shingles. After an individual has chickenpox, the virus lies inactive in nerve tissue near the spinal cord and brain. (Nguyen Decl. ¶ 8.)

30. It is not clear what reactivates the virus. Almost 1 out of every 3 people in the United States will develop shingles and the risk of shingles increases with age. (Nguyen Decl. ¶ 8.)

31. There is no cure for shingles and is treated with anti-viral medication. (Nguyen Decl. ¶ 8.)

32. Acne does not cause shingles. (Nguyen Decl. ¶ 8.)

33. On April 13, 2017, Dr. Nguyen met with Plaintiff following a dermatology consultation with Dr. Randall Hrabko on April 7, 2017. (Nguyen Decl. ¶ 9, Ex. A.)

34. On April 13, 2017, Dr. Nguyen solicited an oral medical history from Plaintiff and physically examined him. (Nguyen Decl. ¶ 9, Ex. A.)

35. On April 13, 2017, Plaintiff reported to Dr. Nguyen a history of cystic acne for 10 years and he had tried multiple oral antibiotics with no lasting resolution. (Nguyen Decl. ¶ 9, Ex. A.)

36. On April 13, 2017, Plaintiff exhibited moderate to severe cystic acne on his face accompanied with scarring. He also had a cyst in the right axilla, or underarm, and had papules to his left buttocks. The rest of Dr. Nguyen's physical examination was normal. (Nguyen Decl. ¶ 9, Ex. A.)

37. On April 13, 2017, there was no indication of active shingles. (Nguyen Decl. ¶ 9, Ex. A.)

38. On April 13, 2017, Plaintiff did not exhibit acute distress and was alert and oriented. (Nguyen Decl. ¶ 9, Ex. A.)

39. Prior to the April 13, 2017 medical appointment, Dr. Nguyen reviewed Dr. Hrabko's April 7, 2017 report and recommendations. (Nguyen Decl. ¶ 9, Ex. A.)

40. On April 7, 2017, Dr. Hrabko diagnosed Plaintiff with cystic acne with hypertrophic scarring, recommending a prescription of Bactrim (also known as "Septra") and Acitretin, and to discontinue Doxycycline; the report did not mention shingles. (Nguyen Decl. ¶ 9, Ex. A.)

41. Dr. Hrabko's April 7, 2017 report indicated that Plaintiff could be developing hidradentis suppurativa, suggesting a surgical consultation for a possible excision of the axilla cyst. (Nguyen Decl. ¶ 9, Ex. A.)

42. Dr. Hrabko recommended injection of Kenalog to keloids. (Nguyen Decl. ¶ 9, Ex. A.)

43. On April 13, 2017, Dr. Nguyen discussed the dermatology consultation and treatment options with Plaintiff prior to determining a treatment plan for his cystic acne and related symptoms. (Nguyen Decl. ¶ 9, Ex. A.)

44. Having reviewed Plaintiff's medical history, and using his medical expertise, on April 13, 2017, Dr. Nguyen prescribed Bactrim (Septra) one tablet twice a day to be kept with Plaintiff in his cell and discontinued Doxycycline as recommended by Dr. Hrabko. (Nguyen Decl. ¶ 9, Ex. A.)

45. On April 13, 2017, Dr. Nguyen did not prescribe Acitretin due to the potential side effects associated with the medication and noted that Tegaderm could be an option in the future. (Nguyen Decl. ¶ 9, Ex. A.)

46. On April 13, 2017, as Plaintiff had previously undergone incision and debridement for hidradentis suppurativa without lasting resolution, Dr. Nguyen did not make a surgical referral, but would revisit the referral if Plaintiff's condition did not improve with medication. (Nguyen Decl. ¶ 9, Ex. A.)

47. Should Plaintiff require pain medication, he, along with all inmates, could obtain over the counter medication pain medication such as ibuprofen at the prison pharmacy. (Nguyen Decl. ¶ 9, Ex. A; Pl. Dep. at 35:9-36:5.)

48. Plaintiff was to have a follow up in seven weeks after April 13, 2017 to determine his

7

ongoing condition. (Nguyen Decl. ¶ 9, Ex. A.)

49. The goal of Dr. Nguyen's April 13, 2017 treatment plan was to begin with conservative treatment before escalating to more aggressive treatment with potential side effects. Dr. Nguyen wanted to determine how Plaintiff reacted to Bactrim (Septra) before using Aciretin, and exposing the patient to severe side effects. (Nguyen Decl. ¶ 10, Ex. A.)

50. Acitretin is a retinoid, which is a form of vitamin A. Acitretin is used to treat severe psoriasis in adults, but can be used to treat cystic acne. (Nguyen Decl. ¶ 10.)

51. The use of Acitretin must be closely monitored due to the side effects associated with the medication, including completing blood work. (Nguyen Decl. ¶ 10.)

52. Side effects of Acitretin include, but are not limited to, itching, pealing of skin, dry skin, chapped lips, dry eyes, muscle pain, sleeping problems, ringing in the ear, genital abnormalities, vision problems, liver damage, and depression. (Nguyen Decl. ¶ 10.)

53. On May 1, 2017, Dr. Baniga reviewed a Health Care Appeal filed by Plaintiff on April 4, 2017. (Baniga Decl. ¶ 5.)

54. Plaintiff had requested a dermatology examination and prescription for Doxycycline at 300 mg twice a day. (Baniga Decl. ¶ 5.)

55. After a review of medical records and the appeal, Dr. Baniga determined that appropriate medical treatment had been provided by Drs. Hrabko and Nguyen. (Baniga Decl. ¶ 5.)

56. Dr. Baniga did not have any criticism of the treatment rendered or treatment plan set out by Dr. Nguyen on April 13, 2017. (Baniga Decl. ¶ 5.)

57. During Dr. Baniga's supervision, Dr. Nguyen provided medically appropriate care to patients, including Plaintiff. (Baniga Decl. ¶ 5.)

58. On May 31, 2017, Dr. Nguyen followed up with Plaintiff. Plaintiff reported he was doing much better with Bactrim (Septra), was avoiding greasy foods and had seen a big improvement. (Nguyen Decl. ¶ 11, Ex. B.)

59. On May 31, 2017, Dr. Nguyen conducted a physical examination which demonstrated much improvement to facial cystic acne and hidradentis axilla cyst. Plaintiff's skin was not greasy. The rest of the physical examination was normal. (Nguyen Decl. ¶ 11, Ex. B.)

60. On May 31, 2017, Plaintiff did not exhibit indication of active shingles. (Nguyen Decl. ¶ 11, Ex. B.)[3]

61. On May 31, 2017, Plaintiff did not exhibit acute distress and was alert and oriented. He did not complain of pain related to acne. (Nguyen Decl. ¶ 11, Ex. B.)

62. On May 31, 2017, as Plaintiff demonstrated improvement with the Bactrim (Septra) as prescribed, Dr. Nguyen ordered Plaintiff continue taking Bactrim (Septra) twice a day. (Nguyen Decl. ¶ 11, Ex. B.)

63. On May 31, 2017, as Plaintiff had shown improvement taking Bactrim (Septra) Dr. Nguyen did not order additional medication for acne. (Nguyen Decl. ¶ 11, Ex. B.)

64. On May 31, 2017, Plaintiff did not complain of pain nor exhibit symptoms of acute pain. As such, Dr. Nguyen did not prescribe pain medication as it was not medically indicated. (Nguyen Decl. ¶ 11, Ex. B.)

65. Plaintiff was to follow up in 180 days after May 31, 2017, or as needed. (Nguyen Decl. ¶ 11, Ex. B.)

66. On June 19, 2017, Dr. Nguyen examined Plaintiff for an injury to his left pinky finger. (Nguyen Decl. ¶ 12, Ex. C.)

67. On June 19, 2017, Plaintiff reported that his pinky had been slammed by a cell door. (Nguyen Decl. ¶ 12, Ex. C.)

68. During the June 19, 2017 medical appointment, Plaintiff did not report dissatisfaction with the active acne treatment. (Nguyen Decl. ¶ 12, Ex. C.)

69. On September 27, 2017, Plaintiff was seen by Zachary Taylor, RN. Plaintiff complained of pain related to cystic acne, though no acute distress was noted. (Nguyen Decl. ¶ 13.)

70. On October 5, 2017, Dr. Nguyen meet with Plaintiff as follow up on the acne treatment. (Nguyen Decl. ¶ 14, Ex. D.)

71. Unlike the appointment on May 31, 2017, during the October 5, 2017 medical

---

[3] In the statement of facts, Defendant mistakenly notes that Plaintiff "did" exhibit active shingles; however, Dr. Nguyen's declaration and medical report clearly reflect that there was "no" indication of active shingles, and the reference otherwise is a typographical error.

9

appointment Plaintiff reported that the cystic acne did not improve with the Bactrim (Septra) treatment. (Nguyen Decl. ¶ 14, Ex. D.)

72. On October 5, 2017, a physical examination showed cystic acne on his face but without any oily skin. The rest of the physical examination was normal. There was no indication of active shingles. Plaintiff did not exhibit acute distress and was alert and oriented. (Nguyen Decl. ¶ 14, Ex. D.)

73. On October 5, 2017, Plaintiff did not complain of pain related to acne. (Nguyen Decl. ¶ 14, Ex. D.)

74. As the cystic acne did not demonstrate the improvement Dr. Nguyen had sought with conservative treatment, on October 5, 2017 Dr. Nguyen decided to add Acitretin once a day to Plaintiff's prescription regimen to treat the cystic acne. Plaintiff also continued to take Bactrim (Septra) as previously prescribed. (Nguyen Decl. ¶ 14, Ex. D.)

75. On October 5, 2017, Dr. Nguyen ordered blood work twice a month to monitor potential side effects of Acitretin in Plaintiff's body. (Nguyen Decl. ¶ 14, Ex. D.)

76. On October 5, 2017, Plaintiff did not complain of pain nor exhibit symptoms of acute pain, Dr. Nguyen did not prescribe pain medication as it was not medically indicated. (Nguyen Decl. ¶ 14, Ex. D.)

77. At no time between February 23, 2017, when Plaintiff arrived at CCI, and October 10, 2017, when he filed the operative amended complaint, did Dr. Nguyen treat Plaintiff for shingles, as he did not exhibit any symptoms associated with active shingles. (Nguyen Decl. ¶ 15.)

78. Plaintiff was treated by Dr. Delmar Greenleaf for shingles while Plaintiff was housed at High Desert Prison. (Nguyen Decl. ¶ 15.)

79. Plaintiff confirmed he has no complaints related to treatment of shingles. (Pl. Dep. at 48:23-50:3.)

**C.  Analysis of Defendants' Motion**

Defendants argue Plaintiff's Eighth Amendment claims amount to a difference of opinion as to the course of treatment for cystic acne which is not cognizable.

///

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett v. Penner, 439 F.3d at 1096. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, at 106; Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) ("The deliberate indifference doctrine is limited in scope.").

Further, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow v. McDaniel, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d at 332).

1. Treatment for Cystic Acne

**a. Defendant Dr. Nguyen**

At the time Plaintiff was transferred to CCI on February 23, 2017, he had been treated for cystic acne by several CDCR providers since his incarceration began in July 2015. Prior to the first face to face examination by Dr. Nguyen, he reviewed Plaintiff's medical records which revealed that Plaintiff had a dermatology examination by Dr. Hrabko on April 7, 2017, who recommended Plaintiff be prescribed Bactrim and Acitretin, to be taken off Doxycycline, be provided a surgical consultation, and injection for Keloids. Although Dr. Nguyen agreed with Dr. Hrabko's diagnosis of cystic acne, he initially chose a conservative treatment plan of prescribing Bactrim only to wait and see how Plaintiff reacted, as Dr. Nguyen was concerned with the side-effects of the medication provided. Dr. Nguyen ultimately did prescribe Acitretin, after Plaintiff did not demonstrate improvement with Bactrim. The evidence clearly demonstrates a difference of medical opinion between Dr. Hrabko and Dr. Nguyen as to the treatment of Plaintiff's cystic acne. See Sanchez v. Vild, 891 F.2d at 242 (prisoner alleged a mere difference in medical opinion where prison doctor advised surgery and subsequent medical personnel treated him but did not recommend surgery). However, Dr. Nguyen did not fail to treat Plaintiff's acne. Rather, he exercised his medical opinion, and chose a conservative treatment opinion, which incorporated some of Dr. Hrabko's recommendations. In addition, Dr. Baniga, who reviewed the treatment plan also agreed.

Plaintiff contends, however, that Dr. Nguyen's "[] course of treatment was medically not acceptable." (ECF No. 10 at 13.)[4] Plaintiff further contends that Dr. Nguyen's failure to prescribe pain medication was medically unacceptable. However, during the physical examinations by Dr. Nguyen, Plaintiff did not exhibit symptoms to warrant prescription pain medication, and his acne was not at a stage where it was objectively evidence that prescription pain medication was necessary. Dr. Nguyen's determination is bolstered by Dr. Hrabko's recommendation which did not include a prescription for pain medication nor any indication of ongoing severe pain. Furthermore, as Plaintiff

---

[4] References herein to page numbers are to the Court's ECF pagination headers.

acknowledged at his deposition, he had over-the-counter pain medication available to him. Thus, Plaintiff's claim that he should have received prescription pain medication is the type of difference in medical opinion between a lay prisoner and medical personnel is insufficient to establish a constitutional violation. See Alford v. Gyaami, No. 2:13-cv-2143 DAD P, 2015 WL 3488301, at *10 n.3 (E.D. Cal. June 2, 2015) (noting that "in other contexts, courts within this circuit have consistently rejected a prisoner's attempt to dictate the terms of their pain medication") (citing cases therein). Accordingly, summary judgment should be granted in favor of Dr. Nguyen.

  **b. Defendant Dr. Baniga**

Plaintiff contends that Dr. Baniga is liable because he reviewed his April 4, 2017, health care appeal and approved the treatment plan by Dr. Nguyen.

Plaintiff's amended complaint does not allege that there was an unconstitutional policy being implemented by Dr. Baniga. In addition, Plaintiff acknowledges that Dr. Baniga did not provide treatment to him and the sole allegation related to Dr. Baniga derives from his review of the April 4, 2017 Health Care Appeal. However, Dr. Baniga reviewed Plaintiff's medical records and determined that Dr. Nguyen's treatment plan was medically appropriate. Furthermore, the only difference between the request in the appeal and Dr. Nguyen's treatment plan was that Plaintiff requested pain medication. (ECF No. 10 at 16-20.) However, Plaintiff's disagreement with the treatment plan and/or medication prescribed is simply a difference of opinion between Plaintiff and medical professionals, which does not support a claim for deliberate indifference. Accordingly, summary judgment should be entered in favor of Dr. Baniga.

  2. <u>Development of Shingles</u>

Plaintiff contends that as a result of the improperly treated acne, he developed shingles. More specifically, Plaintiff contends "…delays in his medication, and treatment has caused Plaintiff's skin disease to degenerate so severely to where he now has a lift threatening disease called The Shingles Virus (sic)." (Amd. Compl. at 5:13-16, ECF No. 10.)

It is undisputed that shingles is caused by the varicella-zoster, the same virus that causes chickenpox. (Nguyen Decl. ¶ 8.) All individuals who developed chickenpox can develop shingles. (<u>Id.</u>) There is no medical consensus as to what causes shingles to develop, however, cystic acne does

not cause shingles. (Id.) Therefore, the medical consensus does not support Plaintiff's claim that shingles developed as a result of his acne. Shingles is a skin condition that is visible. (Id.) While Plaintiff developed and was treated for shingles prior to his arrival at CCI, at the time at issue here, Plaintiff did not exhibit symptoms of shingles. Indeed, neither Dr. Hrabko, a dermatologist, nor Dr. Nguyen diagnosed Plaintiff with shingles as he did not exhibit any symptoms related to shingles. Rather, the outbreak of shingles had been properly treated prior to his arrival at CCI. Consequently, because there is no connection between shingles and cystic acne, Plaintiff cannot and does not demonstrate that any alleged refusal to treat his acne caused him to develop shingles. Accordingly, Defendants are entitled to summary judgment on this claim.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment should be granted; and
2. The Clerk of Court should enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**July 9, 2019**__

UNITED STATES MAGISTRATE JUDGE